## Case No. 7,462.

JONES v. The FLOATING ZEPHYR.

MYTINGER et al. v. SAME.

[7 Am. Law Reg. 494.]

Circuit Court, E. D. Pennsylvania. 1859.

KANE. District Judge. It is unnecessary to decide most of the questions that were argued so fully by the counsel in these cases. There is a difficulty in the way of the libellants' recovery, which is at the threshold, and is, as it seems to me, insuperable. They were shippers on board the Zephyr. She was arrested at the wharf, after lading, by the ice of winter; and the libellants' goods were damaged before the season allowed her to proceed. She sailed, however, at the earliest practicable time, and delivered her cargo at its place of destination to the several consignees. These suits were instituted by the shippers on their bills of lading, while the vessel was still at her port of departure. It is obvious that they were instituted too soon. The ship is liable integrally for the damage sustained by the cargo during the voyage by reason of causes not excepted against in the contract of affreightment. But she cannot be libelled nor her owners sued de die in diem, as the voyage advances, and one item or circumstance of default and damage follows another. The contract is an entire one, and unless it be rescinded, the recourse for a breach of it must be sought when the term for its performance has expired. The liabilities under it cannot be split up. Valin, Comm. lib. 3, tit. 3, art. 9; 2 Boul. P. Dr. Com. 390. To meet this objection, the libellants allege in argument that the voyage was broken up by the detention of the vessel, and the contract for carriage abandoned; and they liken the case of detention by ice, to that of detention by blockade, which according to the adjudication in 3 Serg. & R. 559 (Stoughton v. Rappalo) is said to justify a rescission of the contract by the shippers. But without entering upon the question, whether the declaration of a blockade has this effect, which has been decided by many jurists, (see the opinion of Chancellor Kent in Palmer v. Lorillard, 16 Johns. 348, and Valin's Commentary on the 8th article of title 1. book 3, of the Ordonance,) it is enough to observe: First.—That the ground on which a blockade is supposed to have this effect, is simply the uncertainty of its duration, it resting in the discretion of an enemy, while the period of a detention by ice is ascertainable within reasonable limits, which must be understood to have been in the view of the parties a detention "par force majeure a cause d'um obstacle passages." Valin. Second.— The case referred to was a case of replevin; and it decides, not that even a blockade rescinds the contract of affreightment, but that it justifies a party in rescinding it. Now, in the cases before me, the parties have not claimed to rescind the contract; but on the contrary, they establish it by claiming damages for a breach of the bill of lading, which defines its terms; as their consignees also have done, by accepting the goods when they arrived out. The libels must, therefore, be dismissed.

I do not pass upon the question, whether there was defective stowage of the libelants' goods; nor upon the question of law which was pressed in the argument, whether the libellants could rightfully have reclaimed them, or can now claim damages for the injury they may have sustained, without exhibiting as evidences of their title all the parts of the bill of lading. The references to Abbott, Shipp. 596; Valin, Comm. lib. 3, tit. 3, art. 17; Emerigon, Ass. c. 11, §§ 3, 7; and Boul. P. 2 Do. Com. Mar. T. 7, § 1, would, however, suggest to this last question, a negative answer.

Mr. Paul and Mr. Geo. M. Wharton, for appellants (libellants below), made the following points:

I. The voyage was broken up, because, (1) The character of the article was changed by the fault of the carrier, before the departure of the vessel. It was no longer flour, but something else. (2) Of the lapse of time—a period of two months, and more—after the shipment of the cargo. (3) Of the entire discharge of the cargo. (4) Of the new voyage having been undertaken, merely by agreement, between the captain and certain shippers. The libellants refused to consent to the arrangements of those parties, with regard to the disposition of the cargo.

II. It was within the power of the libellants to consider the voyage as at an end. Stoughton v. Rappalo. 3 Serg. & R. 559; Valin, Comm. art. 9, Pothier. Traite de la Charte Partie, pt. 1, § 4. Nos. 97, 98, 102; The Isabella Jacobina, 4 C. Rob. Adm. 77; 2 Boul. P. 385, 386, tit. 8, § 6.

III. Duty of the captain in regard to stowage; and the specific liability of the ship for the negligence or bad stowage of the master. Fland. Shipp. p. 214, § 200, etc., and cases cited; Abb. Shipp. 425; Curtis on Merchant Seamen, 213, 214; Clark v. Barnwell, 12 How. [53 U. S.] 273; Rich v. Lambert, Id. 347; Fland. Shipp. 217, § 202; The Freeman v. Buckingham, 18 How. [59 U. S.] 183; Brass v. Maitland, 88 E. C. L. 470; Id. p. 476, note.

IV. The real owner must sue in the admiralty. The bare legal title will be disregarded as in equity.

V. Consignor must sue when he is the real owner of the goods. Flanders, pp. 461–464, and cases therein cited; Ludlow v. Bowne, 1 Johns. 1; Freeman v. Birch, 1 Nev. & M.

420; Davis v. James. 5 Burrows. 2680; Grove v. Brien. 8 How. [49 U. S.] 439; Lawrence v. Minturn, 17 How. [58 U. S.] 100.

Mr. Kane and Mr. Geo. W. Biddle, for appellee (respondent below), contended:

I. That the action was one purely in rem. and as such, was dependent upon the general maritime law. The Rebecca [Case No. 11,-619]; The Yankee .Blade, 19 How. [60 U. S.] 89, 90.

II. That the contract in each case, in the bills of lading, was an indivisible one. It was still in force when the suits were instituted. The recourse for the breach of a contract must be sought when the term for its performance has expired. The vessel subsequently sailed; her cargo was delivered to the consignees. The suits were premature. 2 Boul. P. Dr. Com. 390; Logan v. Caffrey, 6 Casey [30 Pa. St.] 196. The parties here did not claim to have rescinded the contract. They treated it as still subsisting. They therefore cannot recover. Goodman v. Pocock, 69 E. C. L. 576.

III. That these contracts are terrean rather than maritime in their character, and are therefore not within the jurisdiction of the admiralty.

IV. That the libellants were bound to exhibit, as evidence of their title, all parts of the bills of lading. Even if the voyage had been broken up, the title to sue, in respect to Mytinger & Co.'s shipment. was in the endorsees of their bill of lading. As to the right of the endorsee or consignee to bring his action, they cited 6 Serg. & R. 429; Ld. Raym. 271; 12 Mod. 146; [Grove v. Brien] 8 How. [49 U. S.] 438; [Lawrence v. Minturn] 17 How. [58 U. S.] 107.

V. That there was no evidence, in the cases, of bad stowage, or of negligence in the conduct of the master. This point, however, was not much discussed by the counsel for the respondent, who relied mainly upon the questions of law comprehended in the four preceding points.

After the argument upon both sides had been concluded. GRIER, Circuit Justice, affirmed the decree of the district court, dismissing the libels.

It may be proper to remark that the decree of the circuit court must, for the present, be regarded as a contingent decision of these cases. The learned judge will write an opinion only in case the libellants determine not to appeal to the supreme court of the United States. Should they conclude, by next October, not to bring the cases before that tribunal, Judge Grier will formally decide the important and interesting questions involved in them.